UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TINA M. CHRISTIAN, et al.,

                    Plaintiffs,

    v.

REGENCE BLUECROSS BLUESHIELD OF
OREGON, et al.,

                    Defendants.

CASE NO. C20-5445-RJB-MAT

REPORT AND RECOMMENDATION

## INTRODUCTION

Plaintiff Tina Christian, on her own behalf and as the personal representative of the Estate of Damien Walter Christian (collectively "plaintiff"), filed a Motion to Dismiss and Remand Case to State Court. (Dkt. 13.) Defendant Regence Bluecross Blueshield of Oregon ("Regence") opposes plaintiff's motion (Dkt. 18) and filed a Motion to Compel (Dkt. 16). Plaintiff opposes the motion to compel (Dkt. 22) and both parties submitted replies (Dkts. 20 & 23). The Court, for the reasons set forth below, recommends the motion to compel be DENIED, the motion to dismiss and remand be GRANTED, and this matter REMANDED to Clark County Superior Court.

REPORT AND RECOMMENDATION
PAGE - 1

BACKGROUND

Plaintiff Tina Christian commenced this action by filing a complaint in the Superior Court of Clark County, Washington on May 24, 2019.  (Dkt. 1-2.)  She identified herself as a single woman residing in La Center, Washington, and the surviving spouse of Damien Walter Christian, who passed away in Portland, Oregon on December 10, 2015.  (*Id.*, ¶1.1.)  Plaintiff brought claims on her own behalf and as the personal representative of the Estate of Damien Walter Christian ("the Estate"), which had been filed in December 2015 in Clark County Superior Court.   (*Id.*, ¶¶1.1-1.2.)  She named as defendants both Regence, an Oregon corporation, and The Vancouver Clinic, Inc., P.S. ("the Clinic"), a Washington corporation.  (*Id.*, ¶¶1.3-1.4.)  Plaintiff asserted the state court had jurisdiction because the action concerned "an insurance contract delivered and issued in the State of Washington, covering a resident of the State of Washington." (*Id.*, ¶3.1.)

The complaint includes several different causes of action against Regence based on its alleged wrongful denial of coverage for some $2,000,000 in medical bills incurred by Damien Christian.  It also includes a declaratory judgment cause of action against both defendants based on the Clinic's April 15, 2016 filing of a proof of claim in Damien's probate for over seven thousand dollars in charges, plaintiff's inability to ascertain their validity and merit, and the desire that Regence pay for any such charges.  (*Id.*, ¶¶4.2-4.3.)

Regence removed the action to this Court on May 12, 2020.  (Dkt. 1.)  Regence noted the Clinic had appeared with counsel in the state court matter, but never filed an answer to the complaint.  Regence provided emails showing that, on November 18, 2019, counsel for plaintiff believed she had "worked out a fair settlement" and offered to dismiss the Clinic if Regence stipulated to keeping the case in superior court, but that Regence refused to waive the right to remove if the case became removable.  (Dkt. 4-1 (Decl. of Stephania Denton in Support of

REPORT AND RECOMMENDATION
PAGE - 2

Removal), Ex. B.)  Regence subsequently sought discovery of communications between plaintiff and the Clinic, ultimately resulting in the provision, on May 6, 2020, of a settlement agreement executed as of March 24, 2020.  (*Id*., at Exs. C-F.)  The settlement provides for plaintiff's payment of either $1,600 or $2,600 to the Clinic, contingent on plaintiff settling with Regence before or after June 25, 2020.  (*Id*., Ex. F.)  It provides for a contemporaneous execution of a notice of dismissal, "effective upon signature" but to "not be presented to the court" until the earlier of either a settlement agreement between plaintiff and Regence or June 25, 2020.  (*Id*.)  On May 7, 2020, counsel for plaintiff confirmed the notice of dismissal had been signed.  (*Id*., Ex. G.)  In the removal, counsel for Regence attested counsel for plaintiff refused to produce the notice of dismissal and that, in a May 7, 2020 conversation, counsel for the Clinic stated "the clinic previously proposed to Plaintiff a full walkaway in exchange for a dismissal of Plaintiff's declaratory judgment claim against the clinic."  (*Id*., ¶¶9-11.)  Regence asserted proper removal based on diversity jurisdiction and timely removal based on the filing of the notice of removal within thirty days of discovering plaintiff had entered into the notice of dismissal.  (*Id*., ¶¶15-22.)

## DISCUSSION

Plaintiff moves to remand to state court based on an absence of diversity jurisdiction.  (Dkt. 13.)  Regence asserts complete diversity, as well as fraudulent joinder and bad faith.  (Dkt. 18; *see also* Dkt. 16.)  Regence also filed a motion to compel, seeking additional discovery should the Court find further information necessary.  (Dkt. 16.)  Both motions are now before the Court.

A.    Legal Standards

1.    Motion to Remand:

"A civil case commenced in state court may, as a general matter, be removed by the defendant to federal district court, if the case could have been brought there originally."  *Martin v.*

REPORT AND RECOMMENDATION
PAGE - 3

1   *Franklin Capital Corp.*, 546 U.S. 132, 134 (2005); *see* 28 U.S.C. § 1441(a). This Court has

2   original jurisdiction over "civil actions where the matter in controversy exceeds the sum or value

3   of $75,000" and where the matter is between citizens of different states.  28 U.S.C. § 1332(a).

4   "[D]iversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from

5   *each* plaintiff."  *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978).

6          Under 28 U.S.C. § 1446(b), a defendant must file a notice of removal either (1) "within

7   thirty days after the receipt by the defendant . . . of a copy of the initial pleading," or (2) "[i]f the

8   case stated by the initial pleading is not removable, . . . within thirty days after receipt by the

9   defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may

10  first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b).

11  However, a case may not be removed on the basis of diversity more than one year after

12  commencement of the action unless the district court finds the plaintiff acted in bad faith in order

13  to prevent a defendant from removing the action. 28 U.S.C. § 1446(c)(1).

14         The Court must "strictly construe the removal statute against removal jurisdiction," so that

15  any doubt as to the right of removal is resolved in favor of remanding the case to state court.  *Gaus*

16  *v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).   The removing party bears the burden to

17  demonstrate removal was proper.  *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*,

18  599 F.3d 1102, 1106-07 (9th Cir. 2010) (citing *Gaus*, 980 F.2d at 567); *Emrich v. Touche Ross &*

19  *Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988).

20         2.    Fraudulent Joinder:

21         The doctrine of fraudulent joinder provides for exception to the requirement of complete

22  diversity.  *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001).  "Fraudulent

23  joinder is a term of art and does not implicate a plaintiff's subjective intent." *Rangel v. Bridgestone*

REPORT AND RECOMMENDATION
PAGE - 4

*Retail Operations, LLC*, 200 F. Supp. 3d 1024, 1030 (C.D. Cal. 2016) (citing *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)).  "Joinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of determining diversity, '[i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state.'" *Morris*, 236 F.3d at 1067 (quoting *McCabe*, 811 F.2d at 1339).

Fraudulent joinder may be established with a showing of either "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court."  *GranCare, LLC v. Thrower*, 889 F.3d 543, 548 (9th Cir. 2018) (quoting *Hunter v. Phillip Morris USA*, 582 F.3d 1039, 1044 (9th Cir. 2009) (citation omitted)).  Under the second method, there must be a showing the fraudulently joined party cannot be found liable on any theory.  *Id*. (citing *Ritchey v. Upjohn Drug Co.,* 139 F.3d 1313, 1318 (9th Cir. 1998)).  "'[I]f there is a *possibility* that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court.'" *Id*. (quoting *Hunter*, 582 F.3d at 1046 (citation omitted)) (emphasis added in *Grancare*).  There is a "general presumption against fraudulent joinder," and it must be proven by clear and convincing evidence.  *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007).[1]

/ / /

---

[1] The Ninth Circuit has clarified that the fraudulent joinder test is not equivalent to the test used to assess the sufficiency of a claim under Federal Rule of Civil Procedure 12(b)(6).  *Grancare, LLC*, 889 F.3d at 549.  Equating the two "conflates a jurisdictional inquiry with an adjudication on the merits." *Id*. "Because the purpose of the fraudulent joinder doctrine is to allow a determination whether the district court has subject matter jurisdiction, the standard is similar to the 'wholly insubstantial and frivolous' standard for dismissing claims under Rule 12(b)(1) for lack of federal question jurisdiction." *Id*. (citations omitted).  This accords with the presumption against removal. *Id*. at 550.

REPORT AND RECOMMENDATION
PAGE - 5

3.     Bad Faith:

"Although the Ninth Circuit has not defined a standard for district courts to use when evaluating the 28 U.S.C. § 1446(c)(1) bad faith exception, district courts in the Ninth Circuit have stated that 'defendants face a high burden to demonstrate that a plaintiff acted in bad faith to prevent removal.'"  *Kolova v. Allstate Insurance Company*, 438 F. Supp. 3d 1192, 1196 (W.D. Wash. 2020) (citing *Heacock v. Rolling Frito-Lay Sales, LP*, C16-0829-JCC, 2016 WL 4009849, at *3 (W.D. Wash. Jul. 27, 2016)).  Consistent with the requirement to strictly construe the removal statute against removal, courts apply a "'strict standard' and find 'bad faith when a plaintiff fail[s] to actively litigate a claim against a defendant *in any capacity*.'"  *Id.*

4.     Motion to Compel Discovery:

Federal Rule of Civil Procedure 26(d) bars parties from seeking "discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order."  Fed. R. Civ. P. 26(d)(1).  Accordingly, discovery requests filed in state court before removal have been found no longer binding and "nullified" following removal.  *See, e.g., Sterling Savings Bank v. Federal Ins. Co.*, C12-0368, 2012 WL 3143909 at *2 (E.D. Wash. Aug. 1, 2012).  However, a district court has discretion to grant discovery allowing for a determination of whether the Court has in personam or subject matter jurisdiction.  *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406 (9th Cir. 1977).

B.     Plaintiff's Motion to Remand

In alleging an absence of diversity, plaintiff identifies herself as a Washington citizen in her personal capacity and an Oregon citizen in her capacity as the personal representative of the Estate.  She identifies Regence and The Vancouver Clinic as, respectively, citizens of Oregon and

REPORT AND RECOMMENDATION
PAGE - 6

Washington.   In   asserting   proper   removal,   Regence   disputes   plaintiff's   alleged   Oregon

citizenship in relationship to the Estate and argues the Clinic was a fraudulently-joined sham

defendant, against whom plaintiff voluntary abandoned her claim effective March 24, 2020 and

acted in bad faith by waiting to file for dismissal with the state court.   Alternatively, should the

Court find the jurisdictional evidence insufficient, Regence moves to compel responses to two

discovery requests seeking information and documents relating to plaintiff's communications and

settlement with the Clinic.   Plaintiff denies the alleged fraudulent joinder and bad faith, and asserts

proper inclusion of the Clinic to adjudicate its claim against the Estate, her proper responses to

discovery requests, and legitimate reasons for the Clinic's continued status as a party despite the

existence of a settlement agreement.

      1.     <u>Personal Representative of Estate</u>:

The legal representative of an estate of a decedent is deemed to be a citizen of the same

state as the decedent.   28 U.S.C. § 1332.   An individual is a citizen of the state in which he or she

is domiciled, not the individual's state of residence.   *Kanter v. Warner-Lambert Co.*, 265 F.3d 853,

857 (9th Cir. 2001).   Domicile is determined at the time of the lawsuit's filing.   *Lew v. Moss*, 797

F.2d 747, 750 (9th Cir. 1986).    A person's domicile is the person's permanent home, the place

where the person resides with the intention to remain or to which he or she intends to return.   *Id*.

"A person residing in a given state is not necessarily domiciled there, and thus is not

necessarily a citizen of that state."   *Kanter*, 265 F.3d at 857.   A party's residence is prima facie

proof of domicile.   *Bey v. SolarWorld Indus. Am.*, 904 F. Supp. 2d 1096, 1102 (D. Or. 2012) (citing

*Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 571 (5th Cir. 2011)).   However, a person's

old domicile is not lost until a new one is acquired, *Lew*, 797 F.2d at 750, and domicile

presumptively continues unless rebutted with sufficient evidence of change.   *Bey*, 904 F. Supp. 2d

REPORT AND RECOMMENDATION
PAGE - 7

at 1102 (citing *Hollinger*, 654 F.3d at 571).

Change in domicile requires both physical presence at the new location and evidence of intent to remain indefinitely. *Lew*, 797 F.2d at 750. Intent to remain may be established "by factors such as: current residence; voting registration and practices; location of personal and real property; location of brokerage and bank accounts; location of spouse and family; membership in unions and other organizations; place of employment or business; driver's license and automobile registration; and payment of taxes." *Kyung Park v. Holder*, 572 F.3d 619, 624–25 (9th Cir. 2009). No single factor is conclusive. *Lew*, 797 F.2d at 750. The Court evaluates the factors in terms of objective facts and, when in conflict with the facts, mere statements of intent are entitled to little weight. *Id.* (citing *Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553, 556 (5th Cir. 1985)).

It appears to be undisputed that, for many years prior to his death, Damien Christian resided in and was domiciled in Washington. (*See* Dkt. 15, ¶¶3-8.) Plaintiff contends that, beginning in August 2015 through his December 10, 2015 death, Damien was domiciled in Oregon. (Dkt. 15, ¶¶ 8-9, 17.) She points to Damien's physical presence in Portland, Oregon, where he lived in an apartment that contained his furniture and personal belongings, where he received medical care and hospice and sent and received mail, and where he ultimately passed away. (*Id.*, ¶¶9-10, 13-15 and Exs. C-F.) She asserts Damien informed her he intended to remain in Oregon until his passing. (*Id.*, ¶10.) The undersigned, however, finds insufficient evidence of a change in domicile.

Damien and Tina married in August 2001. (*Id.*, ¶3.) Damien lived with Tina and their son at their family residence in La Center, Washington, but, shortly before moving to Oregon, exhibited erratic and threatening behavior, moved into a care facility, and was twice civilly committed. (*Id.*, ¶¶3, 6-7, 12.) Moving out of the family home caused Damien to decompensate further and, on July 22, 2015, he moved for dissolution of marriage in Clark County,

Washington. (*Id.*, ¶8.) At some point in August 2015, Damien moved to Portland. (*Id.*, ¶11.) However, in September 2015, Damien informed Tina he "was in the last 3 months of his natural life", "regretted his erratic behavior" in commencing the divorce, and moved to dismiss the dissolution. (*Id.*, ¶11 and Ex. B.) Damien's death certificate lists his address in La Center, Washington as his "Residence", his "Place of Death" as "Other – Other Residence" in Portland, Oregon, and his place of disposition as Longview, Washington. (*Id.*, Ex. G; Dkt. 19 (Decl. of Stephania Denton), Ex. D.)

Plaintiff does not provide evidence showing Damien made any other changes suggesting an intent to remain in Oregon, such as changing his voter registration, banking and other accounts, memberships in organizations, driver's license and automobile registration, or tax payments. *See Lew*, 797 F.2d at 750. She also provides minimal and contradictory evidence regarding intent. That is, while asserting Damien told her he intended to remain in Oregon,[2] Tina also indicates Damien expressed the desire to return to Washington. (Dkt. 15, ¶¶10, 12.) Specifically, Damien "would very much have liked to return to the family residence in La Center, Washington[]" after he dismissed the dissolution, but acquiesced in the decision to remain in Portland in order to shield their son from his death. (*Id.*, ¶12.) Plaintiff also depicts Damien, in the months leading up to his death, as suffering from severe physical and severe mental health issues and as exhibiting erratic behavior, calling into question assertions as to alleged expressions of intent.

---

[2] Regence argues Tina's assertion that Damien informed her he intended to remain in Portland until his passing is inadmissible under RCW 5.60.030. *See Kennedy v. Phillips*, C11-1231-MJP, 2012 WL 261612 at *2 (W.D. Wash. Jan. 30, 2012) (applying Washington's "Deadman Statute" to portions of declarations describing statements by deceased and finding declarations admissible only to the extent declarants "discuss their own actions, feelings or impressions.") Plaintiff responds that the statute restricts only testimonial statements by a decedent and has no application to other evidence, including, *inter alia*, her observations of Damien living in the Portland apartment, using hospice services at that locale, and her reasons for not allowing him to move back into the family home. The Court finds no need to address the admissibility of the alleged statement of intent given the totality of the evidence of Damien's domicile.

REPORT AND RECOMMENDATION
PAGE - 9

The undersigned further finds noteworthy the fact Damien is identified as a resident of Washington in both the complaint and in the probate petition. (Dkt. 1-2, ¶3.1; Dkt. 19, Ex. B; *accord* Dkt. 19, Ex. C (Clark County Superior Court probate-related order).) Plaintiff states the complaint merely and correctly reflects that the insurance policy was issued to Damien while he was a Washington resident (Dkt. 1-2, ¶3.1 ("This action concerns an insurance contract delivered and issued in the State of Washington, covering a resident of the State of Washington.")), and that all insurance claims at issue occurred while he lived in Washington (Dkt. 21 (Supp. Decl. of Bradley Wolf), ¶4, Ex. 1). Counsel for plaintiff explains circumstances leading to his "unwitting error" in identifying Damien as a Washington resident in the probate petition. (Dkt. 14 (Decl. of Bradley Wolf), ¶¶11-16.) However, plaintiff also signed and verified the accuracy of the probate petition. (Dkt. 19, Ex. B at 4.) In addition, although aware of Damien's Portland apartment since January 2016 (*see* Dkt. 14, ¶15 and Dkt. 15, ¶16, Ex. G), counsel, some three-and-a-half years later, identified plaintiff solely as a resident of Washington despite bringing suit on her behalf as both an individual and as the legal representative of the Estate. (*See* Dkt. 1-2, ¶¶1.1-1.2.)

In sum, the objective facts in this case do not support a change in domicile for Damien Christian. The facts reflect a change in residence for a brief period before Damien's passing. Accordingly, the inclusion of Tina Christian as the Estate's personal representative does not establish an absence of diversity between the parties in this matter.

2. The Vancouver Clinic:

Plaintiff entered into a settlement agreement with the Clinic on March 24, 2020 and signed a notice of dismissal effective that date. (Dkt. 4-1, Exs. F & G.) Regence learned about the settlement and notice of dismissal on, respectively, May 6 and May 7, 2020, and removed the case on May 12, 2020. Because it removed the case less than a year after the May 24, 2019 state court

REPORT AND RECOMMENDATION
PAGE - 10

filing, Regence need not show bad faith to provide for removal.  28 U.S.C. § 1446(c)(1).  Regence also shows a timely filing of the notice of removal within thirty days after receipt of a paper – the settlement agreement produced in discovery and counsel's email confirming the signed notice of dismissal – from which it could be first ascertained the case allegedly became removable.  *See* 28 U.S.C. § 1446(b); *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 886-87 (9th Cir. 2010) ("Like a response to interrogatories, a plaintiff's response to deposition questions can constitute "'other paper'" within the meaning of section 1446(b).") (internal and other citations omitted); *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 691-96 (9th Cir. 2005) (letter from counsel construed as suggesting the plaintiff did not intend to pursue claims against a non-diverse defendant constituted an "other paper" that made the case removable).[3]

Whether or not the case was, in fact, removable is subject to dispute.  Regence argues the Clinic was fraudulently joined as a sham defendant, that plaintiff voluntarily abandoned her claim against the clinic with the settlement agreement and contemporaneous notice of dismissal, and that plaintiff acted in bad faith to prevent removal.  Plaintiff denies fraudulent joiner or bad faith and asserts improper removal because the Clinic has not yet been formally dismissed.

a.    Fraudulent joinder:

As stated above, fraudulent joinder serves as an exception to the diversity requirement. *Morris*, 236 F.3d at 106.  That is, where the non-diverse defendant is fraudulently joined, a court can disregard that defendant's citizenship and diversity jurisdiction can exist notwithstanding that defendant's ongoing presence in the suit.  *Rider v. Sears Roebuck and Co.*, C11-2700, 2011 WL

---

[3] Under Ninth Circuit precedent, "the thirty day time period for removal starts to run from defendant's receipt of the initial pleading only when that pleading affirmatively reveals on its face the facts necessary for federal court jurisdiction."  *Harris*, 425 F.3d at 690-91 (internal quotations and alteration omitted).

REPORT AND RECOMMENDATION
PAGE - 11

2222171 at *5 (C.D. Cal. June 7, 2011).   In arguing fraudulent joinder, Regence maintains the evidence establishes plaintiff never intended to pursue a claim against the Clinic.   Regence notes, for example, that the Clinic did not file an answer to the complaint and that plaintiff neither moved for default, nor sought discovery from the Clinic.   (Dkt. 19, ¶2; Dkt. 20 at 3 (plaintiff describes only informal requests for documentation)).   Counsel for plaintiff also, some six months after filing suit, noted her belief she had "worked out a fair settlement" and offered to dismiss the Clinic in exchange for Regence's agreement to remain in superior court.   (Dkt. 4-1, Ex. B.)

Regence also points to the discovery process.   In January 2020, Regence asked for identification of all communications with either defendant and for production of all documents relating to claims or damages alleged and all communications with the Clinic "from 2013 to present." (Dkt. 4-1, Ex. C.)   In response, counsel for plaintiff indicated she had communicated with the attorney for the Clinic and produced the Clinic's 2016 probate claim.   (*Id.*, ¶4 and Ex. C.)   In emails the following month, counsel for Regence asked why plaintiff had not produced any communications with the Clinic's counsel and counsel for plaintiff again pointed to the probate claim.   (*Id.*, Ex. D.)   In an April 24, 2020 email, counsel for Regence asked for clarification as to how the probate claim verification constituted the only communication with the Clinic given counsel's November 2019 statement she had "'worked out a fair settlement" with the Clinic.   (*Id.*, Ex. E.)   Regence sent follow-up discovery requests on May 1, 2020, asking for "copies of all communications (electronic or otherwise)" with the Clinic, all documents received from and provided to the Clinic, and all settlement and other agreements with the Clinic.   (*Id.*, ¶7; Dkt. 14, Ex. 8.)   A few days later, Regence sent a deposition notice to the Clinic.   (Dkt. 4-1, ¶7.)   In an email dated May 6, 2020, plaintiff's counsel stated the November 2019 discussions did not culminate in a settlement with the Clinic until March 24, 2020, and that her earlier reference to the

probate claim was a "fair reading" of the request for production as seeking "substantive discovery regarding the validity" of the Clinic's claim. (*Id.*, Ex. F.) Counsel provided a copy of the settlement agreement and asked whether Regence would strike the interrogatories and deposition of the Clinic. (*Id.*) In subsequent communications, Regence indicated discovery would continue if the Clinic was not dismissed by May 15, 2020, while plaintiff responded that dismissal was not appropriate until claims against Regence had been resolved and rejected any attempt to procure the dismissal for procedural purposes. (Dkt. 17, Ex. A.)

Counsel for Regence also attests that, in a May 7, 2020 telephone conversation, counsel for the Clinic "informed me that the clinic previously proposed to Plaintiff a full walkaway in exchange for a dismissal of Plaintiff's declaratory judgment claim against the clinic." (Dkt. 4-1, ¶9.) She further attests counsel for plaintiff repeatedly refused to provide a copy of the notice of dismissal and that counsel for the Clinic advised that plaintiff's counsel would not permit him to produce a copy of the notice. (*Id.*, ¶11; *see also* Dkt. 17, Ex. A (June 2020 emails including reiteration of Regence's request for copy of notice of dismissal and other responses to earlier discovery requests, and response from plaintiff's counsel denying federal court jurisdiction or relevance of any communications leading up to settlement).)[4]

Plaintiff offers a different view of the evidence. Documentation provided shows that, in April 2016, a credit service organization submitted claims owing to the Estate, including, but not limited to, $7,598.46 in fees owed to The Vancouver Clinic. (Dkt. 14, ¶18, Ex. 5.) Three years later, in a letter dated May 30, 2019, counsel for plaintiff sent a request to the credit service organization for documentation to back up the claims of the Clinic and other providers. (*Id.*, ¶19,

---

[4] While one attorney for plaintiff initially indicated a notice of dismissal had not yet been drafted, another promptly clarified the notice had been "prepared and signed." (Dkt. 4-1, Ex. G.)

REPORT AND RECOMMENDATION
PAGE - 13

Ex. 6.)[5]  Plaintiff did not receive any records or any response and, given overlapping issues of the reasonable amount of the claims and who should pay, named the Clinic as a defendant in the current lawsuit.  (*Id*.)  Counsel denies the Clinic offered to walk away from the debt, and states counsel for the Clinic "informed me that he didn't remember saying such a thing" and "did not see any emails" discussing that idea.   (*Id*., ¶22.)  Counsel for plaintiff explains that, although all properly requested information concerning the settlement would have been provided, the due date for a response to the follow up discovery requests fell on May 31, 2020 and Regence had already removed the case to federal court on May 12, 2020.  (*Id*., ¶ 24 and Ex. 8.)

Plaintiff notes the settlement's successful resolution for less than a third of the amount sought by the Clinic from the Estate.  Plaintiff asserts important reasons for delaying dismissal of the Clinic for reasons having nothing to do with removal.  Specifically, plaintiff hoped to first resolve the claims with Regence and use money from Regence to pay the Clinic; the delay benefited the Clinic in continuing to provide a forum to enforce the settlement in the event of non-payment; and the settlement agreement provided for confidentiality, avoiding any compromise to the amount Regence was willing to pay in light of the discount negotiated with the Clinic.  Plaintiff rejects the suggestion of an agreement "to pay $2,600 to Vancouver Clinic just to maintain some sort of ruse about the existence of a genuine controversy."  (Dkt. 21, ¶10.)

The bulk of the fraudulent joinder arguments raised by Regence focus on plaintiff's alleged intent in including the Clinic as a defendant.  However, "[a]s a rule, the fraudulent joinder analysis 'does not implicate a plaintiff's subjective intent' in bringing suit against a non-diverse defendant."

---

[5] Counsel for plaintiff states this request was sent to the Clinic, but the letter provided is directed to the credit service organization that submitted the claims on behalf of the Clinic and others.  (Dkt. 14, ¶19 and Ex. 6.)

REPORT AND RECOMMENDATION
PAGE - 14

*Gallegos v. Costco Wholesale Corp.*, C20-3250, 2020 WL 2945514 at *3 (C.D. Cal. June 2, 2020) (quoting *Rangel*, 200 F. Supp. 3d at 1030 (citing *McCabe*, 811 F.2d at 1339)).   *See also Albi v. Street & Smith Publications, Inc.*, 140 F.2d 310, 312 (9th Cir. 1944) ("[I]t is universally thought that the motive for joining such a defendant is immaterial.")  Consistent with this general rule, at least one district court has found an email offer to dismiss a non-diverse defendant in exchange for a promise not to remove did not establish fraudulent joinder precluding remand.  *Hassler v. Talbots, Inc.*, C19-5793, 2019 WL 4221390 (C.D. Cal. Sep. 5, 2019) ("Accordingly, whether Hassler *intended* to sue Gomez in good faith or included her in the litigation simply to destroy complete diversity, the Court shall not deny Hassler's [motion to remand] based on her counsel's email.") (emphasis in original).  *See also Rivas v. Target Corp.*, C19-905, 2019 WL 3237375 at *2, n.1 (C.D. Cal. July 18, 2019) (stating that, even if plaintiff acted in bad faith in naming a defendant for the sole purpose of destroying diversity, "a plaintiff's intentions do not play into the fraudulent joinder analysis.")

       The fraudulent joinder analysis requires a showing, by clear and convincing evidence, that plaintiff cannot state a cause of action against the non-diverse party in state court or, stated another way, that that party cannot be found liable on any theory.  *GranCare, LLC*, 889 F.3d at 548; *Hamilton Materials, Inc.*, 494 F.3d at 1206.  *See also Albi*, 140 F.2d at 312 ("It is only where the plaintiff has not, in fact, a cause of action against the resident defendant, and has no reasonable ground for supposing he has, and yet joins him in order to evade the jurisdiction of the federal court, that the joinder can be said to be fraudulent, entitling the real defendant to a removal.") Regence does not show plaintiff could not state a cause of action against the Clinic in relation to the debt lodged against the Estate.  *See* RCW 11.96A.080(1) ("[A]ny party may have a judicial proceeding for the declaration of rights or legal relations with respect to any matter, as defined by

1   RCW 11.96A.030 . . . that arises . . . under this title[.]"); RCW 11.96A.030(2) ("'Matter' includes

2   any issue, question, or dispute involving: (a) The determination of any class of creditors[.]"))

3   Setting aside the disputed allegation the Clinic had offered a waiver, plaintiff demonstrates the

4   existence of a debt against the Estate forming the basis for a claim against the Clinic, as well as

5   the negotiation of a successful settlement of that debt.  There is, at the least, the possibility a state

6   court would have found a cause of action stated against the clinic, thereby precluding a finding of

7   fraudulent joinder.  *See GranCare, LLC*, 889 F.3d at 548.

8                  b.      <u>Voluntary abandonment/dismissal</u>:

9          Regence also argues plaintiff abandoned her claim against the Clinic with the settlement

10  and notice of dismissal and acted in bad faith to prevent removal.  The Court first notes that, as

11  stated above, the "bad faith" exception provides that a case may not be removed based on diversity

12  more than one year after filing unless the district court finds the plaintiff acted in bad faith to

13  prevent removal.  28 U.S.C. § 1446(c)(1).  This exception "governs the *timing* of removal."

14  *Ehrenreich v. Black*, 994 F. Supp. 2d 284, 288 (E.D.N.Y. 2014) ("By contrast, 'fraudulent joinder'

15  is a court-created doctrine that pertains to a federal court's subject matter jurisdiction to hear a

16  case in the first place.") (emphasis in original); *Heller v. American States Ins. Co.*, C15-9771, 2016

17  WL 1170891 at *2 (C.D. Cal. March 25, 2016) ("The bad faith exception, as distinct from . . .

18  fraudulent joinder, applies to 'plaintiffs who joined—and then, after one year, dismissed—

19  defendants [whom] they could keep in the suit, but that they did not want to keep in the suit, except

20  as removal spoilers.'")  (quoting *Aguayo v. AMCO Ins. Co.*, 59 F. Supp. 3d 1225, 1266 (D. N.M.

21  2014)).  In this case, Regence removed the action *before* the one-year removal deadline.  *See Hunt

22  v. Waters*, C19-701, 2019 WL 5895782 at *5 (D. N.M. Nov. 12, 2019) ("[T]he issue of whether

23  Plaintiff acted in bad faith and thereby triggered the exception to the one-year deadline is not

REPORT AND RECOMMENDATION
PAGE - 16

before the Court because the Insurance Defendants did not remove the case past the one-year deadline.") (internal and other citations omitted).  The Court nonetheless considers below the arguments raised by the parties in relation to bad faith.

As argued by plaintiff, and as previously found by this Court, "[i]t is well-settled that 'settlement with a non-diverse party does not establish diversity jurisdiction unless and until that party is dismissed from the action.'"  *Stroman v. State Farm Fire & Cas. Co.*, No. C18-1297-RAJ, 2019 WL 1760588 at *2 (W.D. Wash. Apr. 22, 2019) (quoting *Bishop v. Ride the Ducks Int'l, LLC*, C18-1319-JCC, 2018 WL 5046050 at *2 (W.D. Wash. Oct. 17, 2018) (cited source omitted)).  However, as reflected in the parties' briefing, district courts within the Ninth Circuit and elsewhere do not agree as to whether a formal court order of dismissal is required prior to removal.  *See, e.g., Kasloff v. Kasloff*, C18-4257, 2019 WL 1724138 at *2-3 (D. Ariz. Apr. 18, 2019) (finding "case became removable after [claims] were effectively terminated because of their settlement" and a formal dismissal of non-diverse parties not necessary absent unique circumstances not present, such as the need for court approval of a settlement) (citing *Moore v. Goodyear Tire & Rubber Co.*, No. CV-11-01174, 2011 WL 3684508 at *2 (D. Ariz. Aug. 23, 2011)); *Price v. AMCO Ins. Co.*, No. 17-1053, 2017 WL 4511062 at *2-3 (E.D. Cal. Oct. 10, 2017) (finding enforceable written agreement to settle and dismiss all claims against only non-diverse defendant did not permit removal because the non-diverse defendant had not yet been formally dismissed by the court); *Moody v. Armstrong Int'l, Inc.*, No. C15-9491, 2016 U.S. Dist. LEXIS 783 at *5-6 (C.D. Cal. Jan. 4, 2016) ("Because [the defendant] has not been formally dismissed from this action, its citizenship should not be disregarded for purposes of determining if complete diversity of citizenship exists between the Parties such that removal is proper."); *Fehlman v. McCaffrey*, C10-122, 2010 WL 1959534 at *3-4 (D. Or. Apr. 14, 2010) (even though a "letter opinion" was not "a final, appealable

order," it served as an "'other paper'" allowing for removal and "removing defendants did not

need to await entry of an order in state court dismissing the non-diverse defendant") (citation

omitted).  (*See also* Dkt. 13 at 10-13; Dkt. 18 at 10-12; Dkt. 20 at 4-5.)

The Ninth Circuit has not directly addressed the issue.  The Ninth Circuit has held, under

the "voluntary-involuntary" rule, that a suit not removable when first filed in state court only

becomes removable by a plaintiff's voluntary act.  *Self v. Gen. Motors Corp.*, 588 F.2d 655, 657-

58 (9th Cir. 1978).  *Accord Harris v. Moore*, No C16-1683-JLR, 2017 WL 3288559 at *3 (W.D.

Wash. Mar. 1, 2017).  In *Self*, 588 F.2d at 660, the Ninth Circuit found a case subject to remand

because, even though a final judgment had been entered against a non-diverse defendant, the

plaintiff had not voluntarily dismissed or discontinued the case against that defendant.  Some

district courts, in finding a formal court order of dismissal required prior to removal, observe that

"the underlying principle applied by the Ninth Circuit in *Self* was a formalistic analysis of the

pleadings[:] If – on the face of the pleadings at the time of removal – complete diversity is lacking,

that is the end of the matter."  *Price*, 2017 WL 4511062 at *1, 3 (concluding that, even where a

plaintiff had submitted a request for dismissal to the state court, complete diversity at the time of

removal was lacking because the court had not entered the dismissal until after defendant filed the

notice of removal).  *See also Ritchey*, 139 F.3d at 1318 ("In deciding whether a cause of action is

stated we have declared that we will 'look only to a plaintiff's pleadings to determine

removability.' . . . At least that is true when there has not been a fraudulent joinder.") (quoted

source omitted).

In this case, there is no question plaintiff voluntarily entered into the settlement and notice

of dismissal.  The Court must determine whether that settlement allows for removal.  In *Stroman*

and *Bishop*, this Court was tasked with determining whether bad faith justifying removal existed

REPORT AND RECOMMENDATION
PAGE - 18

where, more than a year after the filing of the complaint, the case had been dismissed by a state court following settlement and removed. *See, e.g., Stroman*, 2019 WL 1760588 at *2-3; *Bishop*, 2018 WL 5046050 at *1-2. The Court also recognized the need for dismissal of the non-diverse defendant by the state court prior to removal. *See Stroman*, 2019 WL 1760588 at *2 (stating that, "even if [a] settlement agreement [had been] negotiated prior to the one-year cut off date, diversity jurisdiction would not be established until [the non-diverse defendant] was actually dismissed."); *Bishop*, 2018 WL 5046050 at *2 ("But 'settlement with a non-diverse party does not establish diversity jurisdiction unless and until that party is dismissed from the action.'") (quoting *Dunkin v. A.W. Chesterton Co.*, C10-458, 2010 WL 1038200 at *2-3 (N.D. Cal. Mar. 19, 2010) (finding "settlement is insufficient to confer removal jurisdiction where the formal dismissal of the non-diverse defendant has not yet been entered" by the state court) (citing *Self*, 588 F.2d at 659)).[6] Consistent with that recognition, and the directive to strictly construe the removal statute against removal, the undersigned finds the settlement agreement and notice of dismissal insufficient, absent an order of dismissal, to establish diversity jurisdiction.

       c.   <u>Bad faith</u>:

Plaintiff contends that, even if the Court found the settlement without dismissal to create diversity, Regence does not demonstrate bad faith. As stated above, bad faith may be found where a plaintiff fails to litigate a claim against the non-diverse defendant "'*in any capacity*.'" *Kolova*, 438 F. Supp. 3d at 1196 (quoting *Heacock*, 2016 WL 4009849 at *3). Courts often consider "'[t]he

---

[6] In an earlier case, this Court found: "A formal and final dismissal under state law is not required. Instead, a case may be removed based on 'any voluntary act of the plaintiff that effectively eliminates the non-diverse defendant from the case.'" *S. Bayview Apts., Assocs. v. Cont'l Western Ins. Co.*, C07-5297-RBL, 2007 WL 2041976 at *3 (W.D. Wash. July 11, 2007) (internal citation to and quoting *Martineau v. ARCO Chem. Co.*, 25 F. Supp. 2d 762, 768 (D. Tex. 1998)). That case did not, however, involve a settlement agreement prior to a court order of dismissal; it involved a plaintiff's failure to state an actionable claim against the non-diverse defendants. *See id.*

REPORT AND RECOMMENDATION
PAGE - 19

timing of naming a non-diverse defendant, the timing of dismissal, and the explanation given for that dismissal.'"   *Id*. at 1196-97.   Factors such as the failure to take discovery may be relevant, but "even 'bare minimum' discovery attempts" have been found sufficient to avoid a bad faith finding.   *Id*. at 1197-98 (declining to find bad faith where, *inter alia*, plaintiffs submitted interrogatories pertinent to non-diverse defendant) (cited source omitted).   Also, unlike fraudulent joinder, a plaintiff's subjective intent is necessarily relevant to a bad faith analysis.   *Heller*, 2016 WL 1170891 at *2.   However, as the "master of [the] complaint", a plaintiff is "entitled to use deliberate tactics to defeat federal jurisdiction."   *Heacock*, 2016 WL 4009849, at *4-5.   A plaintiff may thus be motivated in part by a desire to remain in state court.   *Id*. ("Heacock may not have been motivated by a desire to collect damages from Tally, but instead in part by a desire to remain in state court. However, the evidence presented by Frito Lay does not demonstrate that this desire was the but-for cause of his actions.")

Regence here identifies factors pertinent to a finding of bad faith, such as the failure to take discovery from the Clinic and the timing of dismissal, with the March 2020 notice of dismissal effective upon signature, but presentation to the Court delayed until either plaintiff settled with Regence or June 25, 2020, one month after expiration of the one-year removal deadline.   The communications between the parties regarding discovery also raise some questions as to the sufficiency of plaintiff's responses to Regence's ongoing requests for information and clarification regarding the Clinic.   It is further apparent, given the November 2019 communications regarding settlement, that plaintiff was motivated at least in part by a desire to remain in state court.   Finally, evidence the Clinic offered to walk away from the debt in exchange for voluntary dismissal of the declaratory judgment claim would serve as significant evidence of bad faith delay.

On the other hand, the fact plaintiff named the Clinic as a defendant at the outset, not solely

REPORT AND RECOMMENDATION
PAGE - 20

in response to an attempt at removal, argues against a finding of bad faith. *Kolova*, 438 F. Supp. 3d at 1197; *Heacock*, 2016 WL 4009849 at *4. Plaintiff also indicates she informally sought relevant documentation from the Clinic before procuring the settlement. (*See* Dkt. 20 at 3-4.) Given that she needed only to ascertain the validity of the Clinic's claims for medical services provided, it is not apparent any additional, formal discovery requests to the Clinic were necessary. "Suspicious timing" of dismissal of a non-diverse defendant is also not, by itself, "sufficient to demonstrate bad faith." *Stroman*, 2019 WL 1760588 at *3 (finding dismissal one year and two days after state court action commenced did not by itself establish alleged bad faith in preventing removal); *Bishop*, 2018 WL 5046050 at *1-2 (finding dismissal approximately one and one-half months after filing state court action did not indicate bad faith). Plaintiff here provides reasonable explanations for the timing of dismissal. Plaintiff wanted to use proceeds of a settlement with Regence to finance payment to the Clinic, which plaintiff contends should have been paid by Regence in the first instance. A delay provided for the Clinic's ability to enforce the settlement through motion, instead of an independent action. Plaintiff also sought to best position the Estate in settlement and avoid benefits of the compromise with the Clinic accruing to Regence, rather than the Estate, through a lower settlement offer from Regence. Finally, counsel for plaintiff denies the Clinic offered to walk away from the debt and the Court has no evidence beyond counsels' contentions in their competing declarations.

In sum, even assuming the settlement without a court order of dismissal sufficed to provide for removal, considering the evidence as a whole and the requirement to strictly construe the removal statute against removal, Regence does not demonstrate bad faith. The Court separately

1    addresses the related motion to compel below.[7]

2    C.   Defendant's Motion to Compel

3           Regence moves for an order to compel plaintiff to provide full and complete responses to

4    discovery requests made in the state court proceedings and relating to plaintiff's communications

5    and settlement with the Clinic.   Specifically, should the Court find insufficient evidence to

6    establish the facts material to plaintiff's motion to remand, Regence asks that the Court compel

7    complete responses to:  (1) Interrogatory No. 2, asking for identification of "all communications"

8    with the Clinic regarding either plaintiff's claims or damages; and (2) Request for Production No.

9    3, asking for production of "all communications with the Vancouver Clinic from 2013 to present."

10   (Dkt. 4-1 at 20-21.)  Regence notes that, in *Stroman*, 2019 WL 1760588 at *2, this Court reserved

11   a ruling on a motion to remand and allowed for limited discovery in relation to the timing of a

12   settlement agreement as relevant to an inquiry into the bad faith exception to the removal deadline.

13          In *Stroman*, *id*. at *2-3, the Court found the removing defendant made an insufficient

14   showing of bad faith to prevent removal.  While "somewhat skeptical" additional discovery would

15   show plaintiffs acted in bad faith by intentionally delaying dismissal until two days after the one-

16   year removal deadline, the Court provided the opportunity to conduct limited discovery.  *Id*. at *4.

17   It is similarly unclear whether additional discovery in this matter would yield, for instance,

18

19          [7] Plaintiff does not demonstrate improper removal because the Clinic did not join the notice of
     removal.  "Where fewer than all the defendants have joined in a removal action, the removing party has the
20   burden under section 1446(a) to explain affirmatively the absence of any co-defendants in the notice for
     removal."  *Prize Frize, Inc. v. Matrix (U.S.) Inc.*, 167 F.3d 1261, 1266 (9th Cir. 1999), *superseded by statute
21   on other grounds as stated in Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 682 (9th Cir. 2006).  Regence
     met its burden in explaining the removal as based on plaintiff's execution of a notice of dismissal of her
22   claims against the Clinic, and in arguing fraudulent joinder and bad faith.  *See, e.g., Cicero v. American
     Family Mutual Insurance Company*, C19-1457-JCC, 2019 WL 6716787 at *2 (W.D. Wash. Dec. 10, 2019)
     (finding "procedural requirement of consent by all parties to removal" did not prevent court from evaluating
     the motion given that the defendant made clear it would be contesting whether a party should be a part of
     the case and, in a motion to dismiss, specifically alleged fraudulent joinder).

REPORT AND RECOMMENDATION
PAGE - 22

1    evidence showing plaintiff maintained her claim against the Clinic so that she could remain in state

2    court when she could have walked away without any obligation to pay thousands of dollars in

3    medical bills.  In any event, and as discussed above, the Court in *Stroman* also recognized that

4    dismissal of the non-diverse defendant was necessary to provide for diversity jurisdiction.  *Id*. at

5    *2.  The current case is distinguishable in that the Clinic had not been dismissed by the state court

6    prior to removal.  The Court, as such, finds no basis for granting the motion to compel.[8]

7    D.    Request for Attorney's Fees

8         The removal statute authorizes an award of attorney's fees when the court remands a case

9    as the result of improper removal.  28 U.S.C. § 1447(c).  Fees are appropriate when removal lacks

10   "an objectively reasonable basis." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

11   "Conversely, when an objectively reasonable basis exists, fees should be denied."  *Id*.  Regence

12   removed this matter shortly after discovering plaintiff had entered into a settlement and notice of

13   dismissal with a non-diverse defendant that provided for delaying dismissal until one month after

14   the removal deadline.  Finding the basis for removal objectively reasonable, the Court concludes

15   the request for fees should be denied.  *Id*. at 139 ("[A]bsent unusual circumstances, attorney's fees

16   should not be awarded when the removing party has an objectively reasonable basis for removal.").

17                                      CONCLUSION

18        For the reasons discussed above, defendant's Motion to Compel (Dkt. 16) should be

19   DENIED and plaintiff's Motion to Dismiss and Remand Case to State Court (Dkt. 13) should be

20   GRANTED.  This matter should be REMANDED to Clark County Superior Court.

21

22        [8] Regence also cites to case law distinguishing the discoverability of settlement documents and
     communications from the issue of their admissibility at trial (Dkt. 16 at 7-9) and refutes procedural
23   objections raised by plaintiff (*see* Dkt. 22 at 5-6 and Dkt. 23 at 3-4).  Having found no basis to compel
     discovery, the Court declines to address these arguments.

REPORT AND RECOMMENDATION
PAGE - 23

1

<u>OBJECTIONS</u>

2

      Objections to this Report and Recommendation, if any, should be filed with the Clerk and

3

served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and

4

Recommendation is signed.  Failure to file objections within the specified time may affect your

5

right to appeal.  Objections should be noted for consideration on the District Judge's motions

6

calendar for the third Friday after they are filed.  Responses to objections may be filed within

7

**fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be

8

ready for consideration by the District Judge on **<u>August 21, 2020</u>**.

9

      DATED this <u>3rd</u> day of August, 2020.

10

11

Mary Alice Theiler
United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

REPORT AND RECOMMENDATION
PAGE - 24